DAVID C. CRUMLEY, Petitioner, v. LEWIS S. TOLLETT, Warden, Brushy Mountain State Prison, et al., Respondents.—474 S.W.2d 148.

July 16, 1971.

Certiorari Denied by Supreme Court December 6, 1971.

John Earl Cooksey and William R. Holt, Jr., Sevierville, for petitioner.

David M. Pack, Attorney General, Thomas E. Fox, Deputy Attorney General, Nashville, H. F. Swann, District Attorney General, Dandridge, for respondents.

DWYER, J. ▮ The issue in this record is whether a trial judge may dismiss a petition for post conviction relief without a hearing and appointment of counsel. We hold that he may do so when the petition on its face shows no constitutional abridgment.

The petitioner is incarcerated serving a ninety-nine year sentence for committing the offense of murder in the first degree. His petition is handwritten and is not too dissimilar to the numerous petitions that are filed in court emanating from the penitentiary. It appears to be in good form and contains many of the usual *ratio decideudi* clips from cited authorities. His contention, apparent from a reading of the petition is that he was denied a fair trial by reason of adverse publicity given his case prior to trial. This assertion is not supported

by any relation of facts but there is to be found an abundance of conclusions siphoned from his cited authorities.

In Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 750, 21 L.Ed.2d 718, the following language may be found:

"In most federal courts, *it is the practice to appoint counsel in post-conviction proceedings only after a petition for post-conviction relief passes initial judicial evaluation and the court has determined that issues are presented calling for an evidentiary hearing. E. G.,* Taylor v. Pegelow, 335 F.2d 147 (C.A. 4th Cir. 1964); United States ex rel. Marshall v. Wilkins, 338 F.2d 404 (C.A.2d Cir. 1964). See 28 U.S.C. sec. 1915(d); R. Sokol, A. Handbook of Federal Habeas Corpus 71-73 (1965)." (Emphasis added.)

In American Bar Association Project on Minimum Standards for Criminal Justice Standards Relating to Post Conviction Remedies, Section 4.4 the following language may be found:

"*. . . On the other hand, it is not necessary to appoint counsel for every application. If an application, in light of the state's response, raises no claim cognizable in a post-conviction proceeding, it is wasteful to appoint counsel to determine solely if the applicant has some grounds for relief not stated in his original application.*" (Emphasis added.)

In Monts v. State, Tenn.Crim.App., 455 S.W.2d 627, 629, the following may be found:

". . . In fact his statement in the petition amounts to an unsupported conclusory allegation. Our Federal

Courts have held that when a motion is made to vacate or set aside a judgment *the movant must set forth facts which entitle him to relief.* Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing. O'Malley v. United States, 285 F.2d 733 (C.A. 6).''

We concur in the trial court's ruling in this record that unsupported conclusions do not require a hearing.

Court-appointed counsel contends Monts v. State, *supra,* is not in point because counsel had been appointed for Monts, as opposed to this record where counsel was not appointed. He relies upon T.C.A. 40-3815 to sustain his insistence. We have held that when the petition does not allege facts sufficient to justify a hearing the court may dismiss the petition. This petition was not dismissed for want of form, technical defects or lack of clarity.

█ This petition is in proper form and the substance of it does not create an issue in our opinion calling for an evidentiary hearing. It therefore follows that the trial court is not under a duty to appoint counsel.

The judgment of the trial court in dismissing the petition is affirmed.

Mitchell, J., concurs.

Galbreath, J. (dissenting).

I must respectfully dissent from the majority holding that the trial court was authorized to dismiss this petition for post conviction relief without a hearing and appointment of counsel because the petition on its face

shows no constitutional abridgement. The dismissal was premature inasmuch as no opportunity of any kind was afforded the petitioner to supply by amendment the specifics found lacking.

So emphatic is the law enacted by our Legislature to the exact opposite effect of the majority's holding that is reiterated a number of times in our Post Conviction Procedure Act that there can be no dismissal without an opportunity for assistance of counsel to supply any deficiencies of the petition needed to present a justiciable issue. In T.C.A. sec. 40-3807 we find:

"No petition for relief shall be dismissed for failure to follow the prescribed form or procedure until after the judge has given the petitioner reasonable opportunity, with the aid of counsel, to file an amended petition."

Again, in T.C.A. sec. 40-3815 we find:

"The court shall look to the substance rather than the form of the petition and no petition shall be dismissed for technical defects, in completeness or lack of clarity until after the petitioner has had reasonable opportunity, with aid of counsel to file amendments."

It is only when and if "the petition has been competently drafted and all pleadings, files and records of the case which are before the court conclusively show that the petitioner is entitled to no relief, the court may order the petition dismissed." T.C.A. sec. 40-3809.

The indigent prisoner seeking relief in this case raised the same constitutional issue time and time again pre-

sented to appellate courts, i. e., that adverse publicity following a crime of violence created such an unfavorable condition in the community that a fair trial was rendered improbable. That such conditions invade the fundamental rights of a defendant in a criminal trial has been thoroughly treated and decided by the United States Supreme Court in such cases as Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, and Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543. Thus facts were alleged in the petition which, if true, would entitle the petitioner to relief.

The petitioner alleges that the district attorney general ''fed the press'' publicity adverse to his cause; that such ''prejudicial pre-trial publicity denied petitioner a fair and impartial trial;'' and that he ''was tried by newspaper, radio, television and detective magazines before the trier of facts had opportunity to consider the evidence or hear the actual evidence presented by the State.'' If this was true then the petitioner was denied the fair and impartial trial that is the basic right of every defendant in a criminal trial. (See Stokes v. State, 63 Tenn. 47.)

The respondent filed a complete answer denying the allegations set out in the petition. The answer amounted to a speaking demurrer in that it set out facts not contained in the petition relating to what the jurors said and what the original trial judge said. It is highly probable that an attorney would have recognized this defect in the answer of the State and moved to have it stricken. See History of a Lawsuit, 7th Edition, Section 194. And it is highly probable that an attorney, or even the petitioner himself, would have amended the petition if the

court had indicated by less than a final order its finding that the petition as it then was drafted did not set out sufficient facts to sustain his allegations. This brings me to the principal reason for my belief that the trial court had no lawful right to dismiss the petition in this case. He did not follow the rules governing the disposition of the litigation either as set out in the Tennessee Rules of Civil Procedure generally, or as specifically set out in the Post Conviction Procedure Act, or for that matter as set out in the modified common law pleadings detailed in such works as *History of a Lawsuit* and *Gibson's Suits in Chancery*.

Regardless of what else it may be, a post conviction petition is a civil law suit. The only substantial difference in the treatment courts are required to afford petitions filed under the Act and other civil litigations is that the rules governing form and procedure are greatly relaxed in the former cases so as to afford the freest possible access to the court. Certainly it was never intended by the Legislature in broadening the accessibility to habeas corpus relief by the Post Conviction Procedure Act to hem in the indigent, often illiterate, ill-equipped petitioner by technical restrictions more complicated and devious than those encountered by the average attorney in pleadings field in other types of civil controversies.

Rule 1 of the Rules of Civil Procedure now in effect in this State provides that "these rules shall govern the procedure in . . . all civil actions, whether at law or in equity. . . ." Rule 15 provides that leave to amend shall be freely given by the court when justice so requires. Rule 12.05 would seem to provide the appropriate method of dealing with a petition that does not seem

to the adversary party to set out a sufficient factual allegation to entitle the petitioner to relief. A motion may be filed by the respondent pointing "out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 15 days after notice of the order or within such other time as the court may fix, the court may strike the pleading . . . or make such order as it deems just."

From the above it is obvious that the plaintiff in a divorce action or tort case could not have his deficient pleading summarily dismissed as the petitioner did in this case. Even under the rules followed in all civil courts in Tennessee prior to the enactment of the present Rules of Civil Procedure, the plaintiff was always entitled to amend his petition or declaration so as to supply deficiencies and was, by appropriate order, given a reasonable time to do so prior to having his suit dismissed. Indeed, even in those instances in which suit was commenced by summons only, no court would dismiss such a suit until ample time was afforded under an order allowing the plaintiff to file his pleading. Conversely no defendant was exposed to a judgment by default in the absence of a sufficient response until afforded an opportunity to plead, answer or demur to the declaration filed against him.

The basic rules of pleading in this State, known to every law student, are set out above to illustrate why the action of the trial judge in this case in dismissing a petition considered by him to be "incomplete" (T.C.A. sec. 40-3815) was more restrictive than would be the action of a trial judge in other civil cases in which the rights of plaintiffs are not as liberal as in post conviction cases.

No circuit judge could, in the absence of a motion to dismiss or an equivalent demurrer or plea in abatement and a hearing on same, dismiss a divorce case or a suit for damages growing out of an automobile accident. If a circuit judge asked the clerk to bring before him a pending accident case in which the plaintiff had not filed his declaration some two months after suit was filed and ordered it dismissed without notice to plaintiff, his action would not be affirmed by the Court of Appeals. Or if the judge read a divorce bill to which an answer had been filed and concluded that no grounds had been set out in the pleading to justify the granting of the relief, he would be powerless in the absence of a demurrer and a hearing on same, to summarily dismiss the action. But in this case, one considered by the Legislature somewhat more important in the overall system of the administration of justice than other civil litigation, the trial court, without any opportunity being given the ignorant, imprisoned petitioner to amend, and without notice, proceeded to a summary dismissal of the suit. Certainly justice would not have suffered if a show cause order, requiring the petitioner to plead more specifically the facts relied upon, had been entered. And certainly it would have aided the court in its disposition if counsel had been appointed as required under the clear mandates of T.C.A. sec. 40-3807 and sec. 40-3815.

So important is the right to habeas corpus redress, enlarged by our Post Conviction Act, that every possible assistance should be afforded a person who seeks to call to the attention of the courts his being illegally deprived of his freedom. The accepted fact that a large percentage of the petitions filed are frivolous and nonmeritorious

should not jade a court's attitude toward any application for relief. Neither technicality, form nor substance should be looked to in determining whether or not the application is entitled to serious consideration. An illiterate scrawl on a brown paper sack smuggled to a judge, setting out that the prisoner from whom it came is being held in prison in violation of his constitutional rights, should be as promptly acted upon as another filed in the most precise legal fashion by an attorney of great skill. It is often the helpless and ignorant prisoner who has the greatest need to be heard. The courts should indulge every reasonable inference in favor of the right of the petitioner to be heard and afford him reasonable opportunity to present his contentions. To obey the clear mandate of the law not to dismiss a complaint for "technical defects, incompleteness and lack of clarity until after the petitioner has had reasonable opportunity, with aid of counsel, to file amendments" as provided in Sections 40-3807 and 40-3815 would seem to be the minimum consideration due. To require of him the skill and technical ability of the licensed attorney who himself sometimes stumbles in the brambles of the procedural thicket of pleading and practice is to nullify the meaning of our Post Conviction Act and leave an unlettered prisoner with no adequate entre into the State courts for meaningful adjudication of his constitutionally protected right to habeas corpus.

For the reasons set out above I would hold the petitioner should have been afforded an opportunity, with the assistance of counsel, to refine the pleadings so as to more clearly present justiciable contentions.