IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 26, 2019 Session

**HAROLD WAYNE NICHOLS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County
No. 205863   Don R. Ash, Senior Judge**

————————————————————

**No. E2018-00626-CCA-R3-PD**

————————————————————

Petitioner, Harold Wayne Nichols, pled guilty to first degree murder in 1990. A jury imposed the death penalty. In June of 2016, Petitioner moved to reopen his post-conviction petition on the basis that the Supreme Court's decision in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015), announced a new rule of constitutional law requiring retroactive application. The post-conviction court granted the motion to reopen, but after Petitioner amended his petition and asserted additional claims, the post-conviction court denied relief without a hearing. On appeal, Petitioner argues (1) that the sole aggravating circumstance supporting his death sentence is unconstitutionally vague under *Johnson*; (2) that a judge, rather than a jury, determined facts in imposing the death penalty in violation of *Hurst v. Florida*, __ U.S. __, 136 S. Ct. 616 (2016), a new rule of constitutional law requiring retroactive application; (3) that the State committed prosecutorial misconduct at Petitioner's sentencing hearing, along with a related ineffective assistance of trial counsel claim; (4) that the post-conviction court erred in canceling the scheduled evidentiary hearing without notice and a fair opportunity to be heard; (5) that the post-conviction court erred in denying the parties' proposed settlement agreement to vacate the death sentence and enter a judgment of life imprisonment; and (6) that Petitioner's death sentence is invalid due to the cumulative effect of the asserted errors. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Deborah Y. Drew, Deputy Post-Conviction Defender; Andrew L. Harris, Assistant Post-Conviction Defender, Nashville, Tennessee, for the appellant, Harold Wayne Nichols.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Senior Assistant Attorney General; Neal Pinkston, District Attorney General; and Crystle Carrion, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

On May 9, 1990, Petitioner pled guilty to first degree felony murder, aggravated rape, and first degree burglary with his sentence to be determined by a jury. The Tennessee Supreme Court summarized the evidence presented at the sentencing hearing as follows:

> The proof showed that on the night of September 30, 1988, [Petitioner] broke into the house where the 21-year-old-victim, Karen Pulley, lived with two roommates in the Brainerd area of Chattanooga, Tennessee. After finding Pulley home alone in her upstairs bedroom, [Petitioner] tore her undergarments from her and violently raped her. Because of her resistance during the rape, he forcibly struck her at least twice in the head with a two-by-four he had picked up after entering the house. After the rape, [Petitioner], while still struggling with the victim, struck her again several times with great force in the head with the two-by-four. The next morning, one of Karen Pulley's roommates discovered her alive and lying in a pool of blood on the floor next to her bed. Pulley died the next day. Three months after the rape and murder, a Chattanooga police detective questioned [Petitioner] about Pulley's murder while he was in the custody of the East Ridge police department on unrelated charges. It was at this point that [Petitioner] confessed to the crime. This videotaped confession provided the only link between [Petitioner] and the Pulley rape and murder.

> The evidence showed that, until his arrest in January 1989, [Petitioner] roamed the city at night and, when "energized," relentlessly searched for vulnerable female victims. At the time of trial, [Petitioner] had been convicted on five charges of aggravated rape involving four other Chattanooga women. These rapes had occurred in December 1988 and January 1989, within three months after Pulley's rape and murder. . . .

*State v. Nichols*, 877 S.W.2d 722, 726 (Tenn. 1994) (footnotes omitted), *cert. denied*, 513 U.S. 1114 (1995). In three of those prior rapes, Petitioner had been armed with a weapon (a cord, a knife, and a pistol, respectively), and he caused personal injury to the victim in the fourth. *Id.*

In support of the death penalty, the State relied upon two aggravating circumstances: (1) that Petitioner had one or more prior convictions for violent felonies, namely the five convictions for aggravated rape, and (2) that the murder occurred during the commission of a felony. *See* T.C.A. § 39-2-203(i)(2) & (7). The jury imposed the death penalty after finding both aggravating circumstances were proven beyond a reasonable doubt and that the aggravating circumstances outweighed any mitigating circumstances beyond a reasonable doubt.[1] On direct appeal, the Tennessee Supreme Court concluded, among other issues, that the application of the felony murder aggravating circumstance was harmless error and affirmed Petitioner's convictions and death sentence. *Id*. at 738-39.

On April 20, 1995, Petitioner filed a petition for post-conviction relief, raising multiple claims of ineffective assistance of trial counsel. Following an extensive evidentiary hearing spanning eight days, the post-conviction court upheld Petitioner's convictions and death sentence.[2] On appeal to this Court, we held that the trial court erred in allowing Petitioner to assert his right against self-incrimination at the post-conviction hearing but affirmed the post-conviction court's denial of relief. *Harold Wayne Nichols v. State*, E1998-00562-CCA-R3-PD, 2001 WL 55747 (Tenn. Crim. App. Jan. 19, 2001). The Tennessee Supreme Court held that this Court should not have addressed the self-incrimination issue but affirmed the post-conviction court's denial of relief. *Nichols v. State*, 90 S.W.3d 576 (Tenn. 2002). Petitioner was subsequently unsuccessful in his attempt to seek federal habeas corpus relief. *See Nichols v. Heidle*, 725 F.3d 516 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 704 (2014).

On June 24, 2016, Petitioner filed a motion to reopen his post-conviction petition, alleging that *Johnson v. United States* announced a new constitutional rule requiring retrospective application. In *Johnson*, the United States Supreme Court held that the "residual clause" of the Armed Career Criminal Act ("ACCA"), which defined prior violent felony for the purpose of sentence enhancement as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," was void for vagueness. *See* 135 S. Ct. at 2557-58. Petitioner argued that pursuant to the

---

[1] The trial court subsequently imposed consecutive sentences of 60 years for aggravated rape and 15 years for first degree burglary.

[2] Petitioner also filed a post-conviction petition challenging his non-capital convictions for the rapes of the four other victims, which had served as the basis of the prior violent felony aggravating circumstance. The post-conviction court granted partial relief in the form of a new sentencing hearing in the non-capital rape cases. *See Nichols v. State*, 90 S.W.3d 576, 586-87 (Tenn. 2002). Petitioner ultimately received an effective sentence of 25 years in those four cases, as well as an effective sentence of 225 years for the rapes or attempted rapes of five other victims. *See State v. Harold Wayne Nichols*, No. E2008-00169-CCA-R3-CD, 2009 WL 2633099, at *3 (Tenn. Crim. App. Aug. 27, 2009), *perm. app. denied* (Tenn. Mar. 1, 2010).

ruling in *Johnson*, Tennessee's prior violent felony aggravating circumstance – the sole aggravating circumstance supporting his death sentence – was similarly void for vagueness. On September 29, 2016, the State filed a response to the motion to reopen, arguing that the ruling in *Johnson* did not apply to the language of Tennessee's prior violent felony aggravator, which was more akin to the "elements clause" of the ACCA that was held to be constitutional in *Johnson*. *See* 135 S. Ct. at 2563.

At an October 4, 2016 hearing, the post-conviction court found that Petitioner had stated a "colorable claim" for reopening post-conviction proceedings. In its order granting the motion to reopen, the post-conviction court noted that Petitioner's case was unusual due to the timing of his offense and the amendment of the sentencing statutes in 1989. Even though the pre-1989 statute[3] should have applied to Petitioner's case, the jury was actually instructed on the post-1989 aggravating factor.[4] The post-conviction court noted that challenges to the post-1989 aggravating factor "would likely fail to state a claim in a motion to reopen" because it specifically referred to the "statutory elements" of the prior offense, similar to the "elements clause" that was upheld in *Johnson*. However, the post-conviction court found that the pre-1989 aggravating factor "contained language which arguably was similar to the federal statutory clause recently found unconstitutionally vague in *Johnson*." The post-conviction court stated that its finding that Petitioner's motion to reopen stated a colorable claim was based in part on the "alleged lack of guidance regarding the trial court's application of the pre-1989 prior violent felony conviction statutory aggravating circumstance" as well as "upon the differing conclusions federal and state courts have reached in applying the *Johnson* holding to non-ACCA cases." The order directed Petitioner's counsel "to investigate all possible constitutional grounds for relief for the purpose of filing an amended petition" and that the amended petition should address "any additional issues counsel deems necessary."

On January 12, 2017, Petitioner filed an amendment to the post-conviction petition reasserting the *Johnson* claim as well as adding the following additional claims: (1) that Petitioner's death sentence was invalid under the United States Supreme Court's decision in *Hurst v. Florida*, a new rule of constitutional law requiring retrospective application, because a judge made findings of fact rather than the jury; (2) that the State committed prosecutorial misconduct during closing argument at the sentencing hearing by alluding to the possibility of Petitioner's release if the death penalty were not imposed as well as a related claim that trial counsel were ineffective for failing to object to the argument and

---

[3] "The defendant was previously convicted of one or more felonies, other than the present charge, which involve the use or threat of violence to the person." T.C.A. § 39-13-204(i)(2) (1988).

[4] "The defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory elements involve the use of violence to the person." T.C.A. § 39-13-204(i)(2) (Supp. 1990). As noted below, Petitioner has not challenged this jury instruction as error.

failing to interview jurors regarding the effect of the argument; (3) that Tennessee's death penalty system is "broken"; and (4) that Petitioner's constitutional rights were abridged by the cumulative effect of the errors.

During a December 8, 2017 teleconference with the post-conviction court, the parties announced that they were engaged in settlement negotiations to modify Petitioner's sentence to life imprisonment. At a January 31, 2018 hearing, Petitioner argued that the State could concede that error had occurred in the imposition of the death sentence and could modify the sentence to life imprisonment. The District Attorney General responded that the State was prepared to concede error and enter into an agreement whereby Petitioner's sentence would be modified and his petition withdrawn. The post-conviction court, concerned that a basis to grant post-conviction relief had not been established, opined that a valid basis for post-conviction relief had to be found as a prerequisite to the parties entering a settlement agreement modifying the sentence. The post-conviction court, however, permitted the parties to submit additional authority concerning the propriety of the settlement agreement and rescheduled the hearing for March 14, 2018. On February 12, 2018, the Petitioner filed a motion to approve the settlement agreement, citing similar agreements in other death penalty cases and Petitioner's record of good behavior while incarcerated.

On March 7, 2018, one week prior to the rescheduled hearing, the post-conviction court entered an order summarily denying relief. The post-conviction court stated that it had "reviewed the pleadings of the parties, the record, and applicable law" in accordance with the provisions of the Post-Conviction Procedure Act. The post-conviction court noted that at the time it granted the motion to reopen on the basis that Petitioner had stated a colorable claim, no appellate court had determined whether *Johnson* applied to Tennessee's prior violent felony aggravator. Since then, the Court of Criminal Appeals had rejected such a claim. *See Donnie E. Johnson v. State*, No. W2017-00848-CCA-R28-PD, Order (Tenn. Crim. App. Sept. 11, 2017), *perm. app. denied* (Tenn. Jan. 19, 2018). The post-conviction court concluded that based on the *Donnie E. Johnson* decision, "this issue is appropriate for disposition without a hearing." As to the additional claims raised in the amended petition, the post-conviction court concluded based on its preliminary review that *Hurst* did not announce a new rule of constitutional law that required retrospective application and was inapplicable to this case and that the remaining claims were previously determined, waived, and/or time-barred. Finally, the post-conviction court concluded that it was "not appropriate to accept . . . [the] proposed settlement agreement under the circumstances of this case where there is no claim for post-conviction relief before this Court which should survive this Court's statutorily required preliminary order." On April 6, 2018, Petitioner filed a notice of appeal pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure.

*Analysis*

In *Case v. Nebraska*, 381 U.S. 336 (1965), the United States Supreme Court recommended that the states implement post-conviction procedures to address alleged constitutional errors arising in state convictions in order to divert the burden of habeas corpus ligation in the federal courts. In response, the Tennessee legislature passed the Post-Conviction Procedure Act whereby a defendant may seek relief "when a conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In its current ideation, the Post-Conviction Procedure Act "contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment." T.C.A. § 40-30-102(c). While "any second or subsequent petition shall be summarily dismissed," a petitioner may seek relief on the basis of claims that arise after the disposition of the initial petition by filing a motion to reopen the post-conviction proceedings "under the limited circumstances set out in § 40-30-117." *Id.*; *see Fletcher v. State*, 951 S.W.2d 378, 380 (Tenn. 1997).

A motion to reopen post-conviction proceedings should be granted only under the following circumstances:

(1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or

(2) The claim in the motion is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or

(3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid; and

(4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the

conviction set aside or the sentence reduced.

T.C.A. § 40-30-117(a). The motion should set out the factual basis underlying the claim, supported by affidavit. T.C.A. § 40-30-117(b). Once the post-conviction court grants the motion to reopen,[5] "the procedure, relief and appellate provisions of this part shall apply." *Id.*; *see* T.C.A. § 40-30-101 ("This part shall be known and may be referred to as the 'Post-Conviction Procedure Act.'"). The appellate provisions of the Post-Conviction Procedure Act allow for an appeal as of right under Tennessee Rule of Appellate Procedure 3(b) from a final order granting or denying post-conviction relief. T.C.A. § 40-30-116; Tenn. Sup. Ct. R. 28, § 10(A).[6] We review the lower court's summary denial of post-conviction relief de novo. *Arnold v. State*, 143 S.W.3d 784, 786 (Tenn. 2004).

## I. *Johnson* Claim

In *Johnson*, the Supreme Court held that the "residual clause" contained in the definition of a violent felony under the ACCA was unconstitutionally vague. *Johnson*, 135 S. Ct. at 2557. The ACCA increases the punishment of a defendant convicted of being a felon in possession of a firearm if he has three or more previous convictions for a violent felony. 18 U.S.C. § 924(e)(1). The ACCA defined a "violent felony" as

---

[5] We note that even though the post-conviction court in this case applied the "colorable claim" standard, which is less stringent than the clear and convincing evidence standard that should be applied to motions to reopen under section 40-30-117(a), *see Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004), the State has not challenged the propriety of the post-conviction court's decision to grant the motion to reopen on the *Johnson* claim.

[6] Noting that this matter was initiated as a motion to reopen post-conviction proceedings, this Court directed the parties to submit supplemental briefing addressing whether we had jurisdiction to hear this appeal. *See Timothy Roberson v. State*, No. W2007-00230-CCA-R3-PC, 2007 WL 3286681, at *9 (Tenn. Crim. App. Nov. 7, 2007) (holding that there is no appeal as of right from the denial of a motion to reopen under Tenn. R. App. P. 3(b) and that the failure to follow the procedural requirements for seeking permission to appeal under T.C.A. § 40-30-117(c) "deprives this Court of jurisdiction to entertain such matter"), *perm. app. denied* (Tenn. Apr. 14, 2008). Both parties agreed that the post-conviction court's March 7, 2018 order was not a denial of the motion to reopen but was a denial of post-conviction relief on the merits. We agree that this Court has jurisdiction over this appeal under Tennessee Code Annotated section 40-30-117(b) and Tennessee Rule of Appellate Procedure 3. *Accord. Michael Angelo Coleman v. State*, No. W2007-02767-CCA-R3-PD, 2010 WL 118696 (Tenn. Crim. App. Jan. 13, 2010), *aff'd in part, vacated in part*, 341 S.W.3d 221 (Tenn. 2011); *Byron Lewis Black v. State*, No. M2004-01345-CCA-R3-PD, 2005 WL 2662577 (Tenn. Crim. App. Oct. 19, 2005), *perm. app. denied* (Tenn. Feb. 21, 2006); *contra Floyd Lee Perry, Jr. v. State*, No. W2013-00901-CCA-R3-PC, 2014 WL 1377579, at *4 (Tenn. Crim. App. Apr. 7, 2014) (holding that there was "a procedural error in bringing this appeal before this court" when the petitioner filed a Rule 3 notice of appeal rather than an application for permission to appeal under section -117(c) even though the post-conviction court determined that the motion to reopen presented a colorable claim, appointed counsel, allowed amendment of the motion, and held a hearing prior to denying relief), *perm. app. denied* (Tenn. Sept. 18, 2014).

> any crime punishable by imprisonment for a term exceeding one year . . . that – (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The "otherwise involves conduct" language is known as the ACCA's residual clause. *Johnson*, 135 S. Ct. at 2556. The Court observed that "unlike the part of the definition of a violent felony that asks whether the crime 'has *as an element* the use of . . . physical force,' the residual clause asks whether the crime '*involves conduct*' that presents too much risk of physical injury." *Id*. at 2557 (emphasis in original). Because of prior precedent holding that the statute required a categorical rather than a fact-specific approach, federal courts were required "to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." *Id*. (citing *James v. United States*, 550 U.S. 192, 208 (2007)). The Supreme Court determined this judicial assessment of risk under the residual clause, which was not tied to either real-world facts or statutory elements, was unconstitutionally vague because it "leaves grave uncertainty about how to estimate the risk posed by a crime" and "about how much risk it takes for a crime to qualify as a violent felony." *Id*. at 2557-58. However, the Court clarified that its decision "does not call into the question . . . the remainder of the [ACCA]'s definition of a violent felony." *Id*. at 2563. Thus, the elements clause of the ACCA's violent felony definition survived constitutional scrutiny. *See Stokeling v. United States*, __ U.S. __, 139 S. Ct. 544, 550 (2019) (applying the elements clause to Florida's robbery statute).

While the concept of a statute being unconstitutionally void for vagueness is not new, *see, e.g.*, *Maynard v. Cartwright*, 486 U.S. 356 (1988) (holding a statutory aggravating factor void for vagueness), the Supreme Court subsequently clarified that *Johnson* did announce a new substantive rule which applied retroactively on collateral review. *Welch v. United States*, __ U.S. __, 136 S. Ct. 1257, 1265 (2016) (applying the retroactivity standard set out in *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny); *cf. Van Tran v. State*, 66 S.W.3d 790, 810-11 (Tenn. 2001) (applying the *Teague* retroactivity standard to a motion to reopen). The Court explained that the residual clause was deemed void for vagueness because "courts were to determine whether a crime involved a 'serious potential risk of physical injury' by considering not the defendant's actual conduct but an 'idealized ordinary case of the crime.'" *Id*. at 1262 (quoting *Johnson*, 135 S. Ct. at 2561). In applying *Johnson* to other federal statutes similarly defining violent felony, the Supreme Court held that "the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319, 2326 (2019). However, "a case-specific approach would avoid the vagueness problems that doomed the statute[] in *Johnson*[.]" *Id*. at 2327.

The aggravating circumstance applicable at the time Petitioner committed his crime provides that "[t]he defendant was previously convicted of one or more felonies, other than the present charge, which involve the use or threat of violence to the person." T.C.A. § 39-13-204(i)(2) (1988). However, as noted by the post-conviction court, the jury in Petitioner's capital sentencing hearing was instructed on the post-1989 version of the prior violent felony aggravator, which looks to whether the "statutory elements [of the prior conviction] involve the use of violence to the person." T.C.A. § 39-13-204(i)(2) (Supp. 1990). Though Petitioner refers to his jury as having been "erroneously instructed," he has never challenged this instruction as error, *see generally Nichols v. State*, 90 S.W.3d 576 (Tenn. 2002); *State v. Nichols*, 877 S.W.2d 722 (Tenn. 1994), and he does not do so now. Instead, Petitioner argues that either version of the prior violent felony aggravator would be void for vagueness under *Johnson* because "the addition of the word 'elements' to the statute did not significantly alter the meaning of the statute."

However, this Court has rejected *Johnson* claims with respect to both the pre- and post-1989 statutory language in prior cases denying permission to appeal from the denial of a motion to reopen. *See Donnie E. Johnson v. State*, No. W2017-00848-CCA-R28-PD, Order (Tenn. Crim. App. Sept. 11, 2017) (upholding pre-1989 aggravating factor), *perm. app. denied* (Tenn. Jan. 19, 2018); *Gary W. Sutton v. State*, No. E2016-02112-CCA-R28-PD, Order (Tenn. Crim. App. Jan. 23, 2017) (upholding post-1989 aggravating factor), *perm. app. denied* (Tenn. May 18, 2017). This is because our supreme court has held, that under either version of the statute, trial courts are to look to the actual facts of the prior felony to determine the use of violence when such cannot be determined by the elements of the offense alone. *See State v. Sims*, 45 S.W.3d 1, 12 (Tenn. 2001) (holding that under the post-1989 aggravating factor, a trial court "must necessarily examine the facts underlying the prior felony if the statutory elements of that felony may be satisfied either with or without proof of violence"); *State v. Moore*, 614 S.W.2d 348, 351 (Tenn. 1981) (holding that the State was required "to show that there was in fact either violence to another or the threat thereof" for prior felonies that did not "by their very definition involve the use or threat of violence to a person").[7] Thus, our precedent has never required the use of a judicially imagined ordinary case in applying the prior violent felony aggravating circumstance. The fact that the federal statues invalidated by *Johnson* and its progeny could not be saved by applying a fact-specific approach due to the language of those statutes and the precedent interpreting that language does not mean that a fact-specific approach is itself unconstitutional. *See Davis*, 139 S. Ct. at 2327 (recognizing that a case-specific approach would avoid a vagueness problem but rejecting it based on "the statute's text, context, and history"); *cf. State v. Crank*, 468 S.W.3d 15, 22-23 (Tenn. 2015) ("In evaluating a statute for vagueness, courts may consider the plain

---

[7] The pre-1982 aggravating factor applied in *Moore* contained identical language to the pre-1989 aggravating factor at issue herein.

meaning of the statutory terms, the legislative history, and prior judicial interpretations of the statutory language."). Thus, regardless of which version of the statute did or should have applied to Petitioner, Tennessee's prior violent felony aggravating circumstance is not void for vagueness under *Johnson*. Petitioner is not entitled to relief on this claim.

## *II. Additional Claims and Scope of Amendment*

The next question we must determine is the permissible scope of amendment once a post-conviction court grants a motion to reopen. Despite directing counsel to "investigate all possible constitutional grounds for relief for the purpose of filing an amended petition" in the order granting the motion to reopen, the post-conviction court noted that the additional claims raised in the amended petition were "beyond the intended scope of the current proceedings"; however, the post-conviction court addressed all of Petitioner's claims on the merits. Petitioner contends that because the post-conviction court granted his motion to reopen, the additional claims raised in his amended petition are "part of the initial post-conviction petition proceedings" and are, therefore, not procedurally defaulted. The State argues that because the post-conviction court only granted Petitioner's motion to reopen with respect to the *Johnson* claim and Petitioner's additional claims do not qualify under any of the exceptions to the one-petition rule under Tennessee Code Annotated section 40-30-102(c), the additional claims are procedurally barred.

In *Coleman v. State*, the Tennessee Supreme Court addressed the procedural limitations of raising claims in a motion to reopen and subsequent amendments, which include "the statute of limitations, the restrictions on re-opening petitions for post-conviction relief once they have been ruled on, and the prohibition against re-litigating issues that have been previously determined." 341 S.W.3d 221, 255 (Tenn. 2011). The Post-Conviction Procedure Act "contemplates the filing of only one (1) petition for post-conviction relief," T.C.A. § 40-30-102(c), which must be done within the one-year statute of limitations. *Id*. at (a). The motion to reopen stands as an exception to the one-petition rule. *See id.* at (c) (citing T.C.A. § 40-30-117). The grounds to reopen post-conviction proceedings correspond with the statutory grounds for tolling the statute of limitations. T.C.A. §§ 40-30-102(b), -117(a). Moreover, a claim for relief must not have been previously determined or it will be summarily dismissed. *See* T.C.A. § 40-30-106(f). Failure to overcome these hurdles results in claims that are procedurally barred. *Coleman*, 341 S.W.3d at 257-58. Thus, a post-conviction court's grant of a motion to reopen does not fully place a petitioner back into the procedural posture of his original post-conviction proceedings. *See id.* (holding that ineffective assistance of counsel claim was procedurally barred even though the post-conviction court granted motion to reopen with respect to intellectual disability claim); *Corey Alan Bennett v. State*, No. E2014-01637-CCA-R3-PC, 2015 WL 12978648, at *4 (Tenn. Crim. App. June 29, 2015) ("The only way in which the petitioner may reach back to his original petition is through a

motion to reopen the original petition, and, even then, only the new issues raised will be addressed."), *perm. app. denied* (Tenn. Nov. 24, 2015).

## A. *Hurst* Claim

Petitioner argues that the United States Supreme Court's decision in *Hurst v. Florida* is a new rule of constitutional law requiring retrospective application, which, if true, would bring this claim under an exception to the one-year statute of limitations and the one-petition rule.[8] *See* T.C.A. §§ 40-30-102(b)(1), -117(a)(1). In *Hurst*, the United States Supreme Court held that "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death." 136 S. Ct. at 619. Petitioner argues that this rule was violated in his case because "the trial judge made independent factual findings regarding the existence of the prior violent felony aggravating circumstance necessary for the imposition of the death penalty." Petitioner argues that this rule was further violated when the appellate court, after striking the felony murder aggravating circumstance, reweighed the remaining aggravating circumstance against the mitigation evidence in determining that the error was harmless. *See Nichols*, 877 S.W.2d at 737-39. The State responds that *Hurst* did not announce a new rule of constitutional law requiring retrospective application and, thus, consideration of the issue is procedurally barred.

In order to determine whether an appellate court ruling creates a new constitutional rule that must be applied retroactively to cases on collateral review, the Post-Conviction Procedure Act provides the following guidance:

> For purposes of this part, a new rule of constitutional criminal law is announced if the result is not dictated by precedent existing at the time the petitioner's conviction became final and application of the rule was susceptible to debate among reasonable minds. A new rule of constitutional criminal law shall not be applied retroactively in a post-conviction proceeding unless the new rule places primary, private individual conduct beyond the power of the criminal law-making authority

---

[8] We note there was some discussion at the October 4, 2016 hearing regarding the possibility of filing either an amended or a second motion to reopen, presumably with regard to the *Hurst* claim, depending on the post-conviction court's ruling on the pending motion to reopen with respect to the *Johnson* claim. There is no limit on the number of motions to reopen that may be filed, only a limit on the types of claims that may be brought. *See* T.C.A. § 40-30-117. If Petitioner had raised this claim as a separate motion to reopen and it had been denied by the post-conviction court, our jurisdiction to hear the appeal would be dependent on whether Petitioner followed the proper procedure for seeking permission to appeal pursuant to Tennessee Code Annotated section 40-30-117(c). *See Timothy Roberson*, 2007 WL 3286681, at *9. Additionally, our standard of review would be abuse of discretion rather than de novo. *See* T.C.A. § 40-30-117(c); *Fletcher v. State*, 951 S.W.2d 378, 383 (Tenn. 1997).

to proscribe or requires the observance of fairness safeguards that are implicit in the concept of ordered liberty.

T.C.A. § 40-30-122. The United States Supreme Court has stated that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government [or] . . . if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 (citations omitted). The Tennessee Supreme Court has applied the *Teague* retroactivity standard to motions to reopen under Tennessee Code Annotated section 40-30-117(a)(1). *See Van Tran*, 66 S.W.3d at 810-11.

In *Hurst*, the United States Supreme Court held that Florida's capital sentencing scheme was unconstitutional under the Sixth Amendment because it "required the judge alone to find the existence of an aggravating circumstance" while the jury merely provided an advisory sentence without making any specific findings. 136 S. Ct. at 624. In reaching this conclusion, the Court relied heavily on its previous decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 494 (2000) (holding that any fact that "expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict" must be submitted to a jury), and *Ring v. Arizona*, 536 U.S. 584, 604 (2002) (applying *Apprendi* to capital sentencing and the finding of aggravating circumstances). *See Hurst*, 136 S. Ct. at 621-22. Specifically, the Court held that "[t]he analysis the *Ring* Court applied to Arizona's sentencing scheme applies equally to Florida's [because l]ike Arizona at the time of *Ring*, Florida does not require the jury to make the critical findings necessary to impose the death penalty." *Id*. Thus, "[i]n light of *Ring*, we hold that Hurst's sentence violates the Sixth Amendment." *Id*. at 622.

*Hurst* is clearly derivative of *Apprendi* and *Ring*; it did not expand upon their holdings or otherwise break new ground. The fact that the *Hurst* Court expressly overruled pre-*Apprendi* cases upholding Florida's capital sentencing scheme does not mean that the decision was not dictated by precedent or was susceptible to reasonable debate; those cases were overruled precisely because they were irreconcilable with *Apprendi*. *See Hurst*, 136 S. Ct. at 623 (overruling *Hildwin v. Florida*, 490 U.S. 638 (1989) and *Spaziano v. Florida*, 468 U.S. 447 (1984)). The United States Supreme Court has previously held that its decision in *Ring* "announced a new procedural rule that *does not apply retroactively* to cases already final under direct review," *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (emphasis added), even though it too overruled a pre-*Apprendi* case. *See Ring*, 536 U.S. at 603 (overruling *Walton v. Arizona*, 497 U.S. 639 (1990)). Moreover, this Court has held that neither *Ring* nor *Apprendi* required retrospective application to cases on collateral review. *See, e.g., Anthony Darrell Hines v. State*, No. M2004-01610-CCA-RM-PD, 2004 WL 1567120, at *37 (Tenn. Crim. App. July 14, 2004), *perm. app. denied* (Tenn. Nov. 29, 2004). Thus, it follows that *Hurst* likewise does not require retrospective application. This Court has consistently held as such in

- 12 -

previous cases denying permission to appeal from the denial of a motion to reopen raising a *Hurst* claim. *See, e.g., Charles Rice v. State*, No. W2017-01719-CCA-R28-PD, Order (Tenn. Crim. App. Nov. 14, 2017), *perm. app. denied* (Tenn. Mar. 15, 2018); *Dennis Wade Suttles v. State*, No. E2017-00840-CCA-R28-PD, Order (Tenn. Crim. App. Sept. 18, 2017), *perm. app. denied* (Tenn. Jan. 18, 2018). Because *Hurst* did not announce a new rule of constitutional law that must be applied retrospectively, this claim is procedurally barred by both the one-year statute of limitations and the one-petition rule. *See* T.C.A. §§ 40-30-102(b), -117(a). Petitioner is not entitled to relief.

### B. Prosecutorial Misconduct and Ineffective Assistance of Counsel Claims

Petitioner argues that during closing argument at the capital sentencing hearing, the State committed prosecutorial misconduct by commenting on the possibility of parole and Petitioner's future dangerousness if released, thereby tainting the jury's verdict and rendering his death sentence unconstitutional. He argues that the majority's conclusion on direct appeal that the argument did not "prejudicially affect[] the jury's sentencing determination," *Nichols*, 877 S.W.2d at 733, was wrong based on affidavits from jurors indicating that they voted for death based on the belief that "the State of Tennessee would never actually execute anyone sentenced to death" and that "a death sentence served as a de facto life in prison without the possibility of parole (LWOP) sentence." In a closely related argument, Petitioner alleges that trial counsel were ineffective for failing to object to the improper argument and for "failing to interview jury members about the State's closing argument prior to litigating the motion for a new trial."

Regardless of whether this issue is framed as one of prosecutorial misconduct or ineffective assistance of counsel, it has been previously determined. "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." T.C.A. § 40-30-106(h). Regardless of whether a petitioner actually does so, "[a] full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence[.]" *Id.*; *see also* Tenn. Sup. Ct. R. 28, § 2(E). Petitioner raised this exact claim of prosecutorial misconduct on direct appeal. *See Nichols*, 877 S.W.2d at 732-33. Additionally, Petitioner raised several claims of ineffective assistance of trial counsel during his original post-conviction proceedings. *See Nichols*, 90 S.W.3d at 587-605. Because ineffective assistance of counsel is a single ground for relief that may not be relitigated by presenting additional factual allegations, *see Cone v. State*, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995), the issue cannot be relitigated through a motion to reopen after having been presented in the original post-conviction proceedings. *See Coleman*, 341 S.W.3d at 257-58. Because Petitioner's claim of prosecutorial misconduct during closing argument, as well as the related claim of ineffective assistance of counsel, cannot overcome the hurdle of having been previously determined, consideration of these issues is procedurally barred. T.C.A. § 40-30-106(f).

Acknowledging the post-conviction court's determination that these issues were previously determined, Petitioner argues that due process concerns and the exceptions to the "law of the case" doctrine overcome the Post-Conviction Procedure Act's bar on previously determined issues. While this Court has previously recognized that due process concerns may "overcome the Act's bar on previously determined issues in some instances," *William G. Allen v. State*, No. M2009-02151-CCA-R3-PC, 2011 WL 1601587, at *7 (Tenn. Crim. App. Apr. 26, 2011)*, perm. app. denied* (Tenn. Aug. 25, 2011), Petitioner has pointed us to no case where it has successfully been invoked. *See id.* at *9 (concluding that due process did not require relaxation of the bar against previously determined issues). As interpreted in the context of tolling the statute of limitations, due process requires that petitioners "be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner" before claims may be terminated for failure to comply with procedural requirements. *See Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010). However, by their very definition, previously determined issues have been presented at a "full and fair hearing." *See* T.C.A. § 40-30-106(h); Tenn. Sup. Ct. R. 28, § 2(E). Even if due process may be invoked to overcome the bar on previously determined issues, Petitioner has not alleged how he was prevented from presenting these claims at a meaningful time and in a meaningful manner. *Cf. Whitehead v. State*, 402 S.W.3d 615, 631 (Tenn. 2013) (holding that due process tolling of the statute of limitations requires a showing of "some extraordinary circumstance" that prevented timely filing).

Moreover, the law of the case doctrine prevents the reconsideration of claims that have been decided in a prior appeal of the same case. *See State v. Jefferson*, 31 S.W.3d 558, 560-61 (Tenn. 2000). Although it has been cited in some opinions by this Court to support a post-conviction court's refusal to reconsider previously determined issues, the exceptions to the law of the case doctrine have never been applied in a post-conviction context. *William G. Allen*, 2011 WL 1601587, at *8; *see Jefferson*, 31 S.W.3d at 561 (stating that the limited exceptions to the law of the case doctrine include substantially different evidence, a clearly erroneous resulting in manifest injustice, and a change in the controlling law). Even if the exceptions did apply, Petitioner's claim of substantially different evidence is based on inadmissible juror affidavits about the effect of the prosecutor's argument on their deliberation, which would not justify reconsideration of the issue. *See Hutchison v. State*, 118 S.W.3d 720, 740-41 (Tenn. Crim. App. 2003) (citing Tenn. R. Evid. 606(b)) (holding post-conviction court's exclusion of juror affidavit regarding effect missing evidence would have had on verdict was proper).

Finally, even if Petitioner could overcome the procedural hurdle of these claims having been previously determined, they do not fall under one of the exceptions to either the one-year statute of limitations or the one-petition rule. *See* T.C.A. §§ 40-30-102(b), -117(a). Petitioner's claims of prosecutorial misconduct and ineffective assistance of

counsel are procedurally barred under the Post-Conviction Procedure Act. Petitioner is not entitled to relief on either claim.

### III. Canceling the Evidentiary Hearing

At the conclusion of the January 31, 2018 hearing, the post-conviction court reset the hearing to March 14, 2018, for either the entry of the proposed settlement agreement or an evidentiary hearing on the merits of Petitioner's claims. However, one week prior to the rescheduled hearing, the post-conviction court entered its order summarily denying post-conviction relief on all of Petitioner's claims. On appeal, Petitioner argues that the post-conviction court violated his right to due process by failing to provide him with notice and an opportunity to be heard. The State responds that Petitioner had multiple opportunities to be heard and that the Post-Conviction Procedure Act compelled summary dismissal of a petition that failed to raise meritorious claims.

The Post-Conviction Procedure Act details the review process that precedes an evidentiary hearing. First, the post-conviction court considers the petition itself to determine whether it asserts a colorable claim for relief. T.C.A. § 40-30-106(f). A colorable claim is "a claim that, if taken as true, in the light most favorable to the petitioner, would entitle petitioner to relief under the Post-Conviction Procedure Act." Tenn. Sup. Ct. R. 28, § 2(H). If the facts alleged in the petition, taken as true, fail to show that the petitioner is entitled to relief, the petition shall be dismissed. T.C.A. § 40-30-106(f). Additionally, the post-conviction court must determine whether the petition has been timely filed and whether any claims for relief have been waived or previously determined. T.C.A. § 40-30-106(b), (f). If the petition survives this initial review, the post-conviction court may afford an indigent pro se petitioner the opportunity to have counsel appointed and to amend the petition, if necessary. T.C.A. § 40-30-107(b)(1). The State then has an opportunity to file a response. T.C.A. § 40-30-108. In the final stage of the process preceding an evidentiary hearing, the post-conviction court reviews the entire record, including the petition, the State's response, and any other files and records before it. T.C.A. § 40-30-109(a). If, upon reviewing these documents, the post-conviction court determines conclusively that the petitioner is not entitled to relief, the petition shall be dismissed. *Id.* Thus, "the Post-Conviction Procedure Act clearly affords the [post-conviction] court the authority to dismiss a petition without holding an evidentiary hearing, notwithstanding the fact that the petition may have survived earlier dismissal." *Burnett v. State*, 92 S.W.3d 403, 407 (Tenn. 2002); *see also Swanson v. State*, 749 S.W.2d 731, 736 (Tenn. 1988) (holding that when a colorable claim for relief has been presented, a hearing may not be necessary after the petitioner has had the assistance of counsel to amend the petition, by which the court may then fully evaluate the merits of the claim); *Andre Benson v. State*, No. W2016-02346-CCA-R3-PC, 2018 WL 486000, at *3 (Tenn. Crim. App. Jan. 19, 2018) ("A post-conviction court may also

dismiss the petition later in the process but still prior to a hearing . . . on the basis that a petitioner is conclusively not entitled to relief."), *no perm. app. filed.*

In this case, the post-conviction court determined that Petitioner, who was already represented by counsel, raised a colorable claim for relief in his motion to reopen and allowed Petitioner the opportunity to submit an amended petition. At the January 31, 2018 hearing, the post-conviction court indicated its concern that Petitioner had not asserted a meritorious ground for relief and allowed Petitioner the opportunity to submit supplemental briefing. Thereafter, the post-conviction court "reviewed the pleadings of the parties, the record, and applicable law" and determined that Petitioner's claims were "appropriate for disposition without a hearing." As we have already concluded, the post-conviction court did not err in denying relief on any of the claims raised by Petitioner. The *Johnson* claim was the only one that was not procedurally barred; because that claim raised only a question of law and statutory interpretation, there was no need for an evidentiary hearing. *See Sowell v. State*, 724 S.W.2d 374, 378 (Tenn. Crim. App. 1986) (affirming post-conviction court's dismissal of petition without a hearing when "[t]he only valid issue raised was a legal question which has been decided adversely to defendant's contention by the case law of this State"). The post-conviction court, despite its earlier finding that Petitioner had raised a colorable claim, was clearly authorized by the Post-Conviction Procedure Act to dismiss the amended petition without an evidentiary hearing upon conclusively determining that Petitioner was not entitled to relief. *See Burnett*, 92 S.W.3d at 407; *Swanson*, 749 S.W.2d at 736.

## IV. Proposed Settlement Agreement

Petitioner argues that the post-conviction court erred by denying the proposed settlement agreement wherein Petitioner's sentence would be modified from death to life imprisonment. According to Petitioner, "post-conviction courts are empowered to settle a case for less than death without determining a likelihood of prevailing on a specific claim." Petitioner asserts that the post-conviction court abused its discretion and acted arbitrarily and without legal authority in concluding that it was "not appropriate to accept such a proposed agreement under the circumstances of this case where there is no claim for post-conviction relief before this Court which should survive this Court's statutorily required preliminary order." Despite the fact that the District Attorney General was prepared to enter into this settlement agreement and concede relief on the *Johnson* and *Hurst* claims in the post-conviction court, the State argues on appeal that these claims are meritless and that "only the Governor has the authority to unwind a criminal judgment absent a judicial finding that the judgment is infirm." We agree with the State's position on appeal that the post-conviction court lacked jurisdiction to entertain the settlement agreement.

Under the Post-Conviction Procedure Act,

> [i]f the court finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable, . . . the court shall vacate and set aside the judgment or order a delayed appeal as provided in this part and shall enter an appropriate order and any supplementary orders that may be necessary and proper.

T.C.A. § 40-30-111(a). Petitioner focuses on the portion of the statute regarding the entry of "an appropriate order" and argues that this language gives the post-conviction court the authority to accept a settlement agreement in a capital case without making any findings as to the merits of the post-conviction claims. Relying heavily upon several trial court orders in other capital post-conviction cases wherein the court accepted the parties' agreement to modify a death sentence, Petitioner argues that there is a consistent practice among trial courts of granting the requested relief without hearing any proof, requiring the State to make any concessions, or making any findings regarding the merits of the underlying post-conviction claims. However, these unappealed trial court orders hold no binding precedential value upon our Court or any other court. *See State v. Candra Ann Frazier*, No. 03C01-9904-CC-00146, 1999 WL 1042322, at *2 (Tenn. Crim. App. Nov. 18, 1999) (noting that "the circuit court's opinion merely constitutes persuasive authority and is not binding, under the theory of stare decisis, upon other judicial circuits").

More importantly, Petitioner's argument overlooks and completely ignores the first clause of the statute: "*If* the court finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable . . . ." T.C.A. § 40-30-111(a) (emphasis added). Clearly, the post-conviction court's authority to vacate a judgment, order a delayed appeal, or enter any other "appropriate order" is contingent upon the court's finding that the judgment is void or voidable due to an infringement of the petitioner's constitutional rights. *See Wilson v. State*, 724 S.W.2d 766, 768 (Tenn. Crim. App. 1986) (holding that trial court's grant of delayed appeal was inappropriate where there was no finding of constitutional deprivation on the face of the order). Only upon a finding that either the conviction or sentence is constitutionally infirm can the post-conviction court vacate the judgment and place the parties back into their original positions, whereupon they may negotiate an agreement to settle the case without a new trial or sentencing hearing. *See State v. Boyd*, 51 S.W.3d 206, 211-12 (Tenn. Crim. App. 2000). As this Court has noted, "the post-conviction law is not for the purpose of providing sentence modifications" but for remedying constitutional violations. *Leroy Williams v. State*, No. 03C01-9209-CR-00306, 1993 WL 243869, at *3 (Tenn. Crim. App. July 6, 1993) (citing *State v. Carter*, 669 S.W.2d 707 (Tenn. Crim. App. 1984)).

Moreover, the post-conviction court did not abuse its discretion in refusing to accept the District Attorney General's concession of error on Petitioner's post-conviction claims. *See State v. Hester*, 324 S.W.3d 1, 69 (Tenn. 2010) (holding that a court is not

- 17 -

required to accept the State's concession). Indeed, the post-conviction court acted well within its authority by independently analyzing the issues to determine whether the concession reflected an accurate statement of the law. *See Barron v. State Dep't of Human Servs.*, 184 S.W.3d 219, 223 (Tenn. 2006); *see also State v. Shepherd*, 902 S.W.2d 895, 906 (Tenn. 1995) (independently analyzing the defendant's death sentence after finding "no legal basis in this record for outright modification of the sentence to life," despite the State's concession at oral argument). The Post-Conviction Procedure Act requires the post-conviction court to "state the findings of fact and conclusions of law with regard to each ground" in its final order disposing of the post-conviction petition, regardless of whether it is granting or denying relief. T.C.A. § 40-30-111(b); Tenn. Sup. Ct. R. 28, § 9(A); *see State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984) (noting that this is a mandatory requirement designed to facilitate appellate review of the post-conviction proceedings). The post-conviction court did not act arbitrarily or abuse its discretion in following the statutory requirements of the Post-Conviction Procedure Act.

In the absence of a finding of constitutional violation sufficient to grant post-conviction relief, the post-conviction court is without jurisdiction to modify a final judgment. *See Delwin O'Neal v. State*, No. M2009-00507-CCA-R3-PC, 2010 WL 1644244, at *2 (Tenn. Crim. App. Apr. 23, 2010) (affirming trial court's finding that it lacked jurisdiction over a post-conviction petitioner's request for a reduction of sentence after constitutional claims were abandoned), *perm. app. denied* (Tenn. Sept. 3, 2010). Petitioner's reliance on case law addressing a trial court's authority to accept a plea agreement to resolve pending charges pre-trial is misplaced given that Petitioner's convictions have long since become final. "[O]nce the judgment becomes final in the trial court, the court shall have no jurisdiction or authority to change the sentence in any manner[,]" T.C.A. § 40-35-319(b), except under certain limited circumstances "authorized by statute or rule." *State v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991); *see, e.g.*, T.C.A. § 40-35-212; Tenn. R. Crim. P. 35, 36, 36.1; *see also Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999) (noting the availability of habeas corpus and post-conviction to collaterally attack a conviction or sentence that has become final). "[J]urisdiction to modify a final judgment cannot be grounded upon waiver or agreement by the parties." *Moore*, 814 S.W.2d at 383 (citing *State v. Hamlin*, 655 S.W.2d 200 (Tenn. Crim. App. 1983)). "It is well-settled that a judgment beyond the jurisdiction of a court is void." *Boyd*, 51 S.W.3d at 210 (citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)); *see also Lonnie Graves v. State*, No. 03C01-9301-CR-00001, 1993 WL 498422, at *1 (Tenn. Crim. App. Dec. 1, 1993) (citing *State v. Bouchard*, 563 S.W.2d 561, 563 (Tenn. Crim. App. 1977)) (holding that "[t]he purported modification of an order that has 'ripened' into a final judgment is void" despite the agreement of the parties). To hold otherwise would effectively allow the trial court to exercise the pardoning and commutation power, which is vested solely in the Governor under Article 3, section 6 of the Tennessee Constitution. *See Workman v. State*, 22 S.W.3d 807, 808

(Tenn. 2000); *State v. Dalton*, 72 S.W. 456, 457 (Tenn. 1903). Thus, the post-conviction court did not err in refusing to accept the proposed settlement agreement and modify a final judgment when it lacked the statutory authority to do so under the Post-Conviction Procedure Act.

## *V. Cumulative Error*

Finally, Petitioner argues that "all claims of error coalesced into a unitary abridgment of [Petitioner's] constitutional rights." "To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings." *State v. Hester*, 324 S.W.3d 1, 77 (Tenn. 2010). Because Petitioner has not established any error in the post-conviction proceedings, he is not entitled to relief via the cumulative error doctrine.

## *Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE